O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMIE CARTER, <br><br> Plaintiff, <br><br> v. <br><br> J. GASTELO *et al.*, <br><br> Defendants. | Case No. 2:19-cv-08986-JGB (MAA) <br><br> **MEMORANDUM DECISION AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND** |

**I.  INTRODUCTION**

On October 18, 2019, Plaintiff Jimmie Carter ("Plaintiff"), an inmate at California Men's Colony ("CMC"), proceeding *pro se* and *in forma pauperis*, filed a Complaint alleging violations of his civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983").  (Compl., ECF No. 1.)  The Court has screened the Complaint as prescribed by 28 U.S.C. § 1915A and § 1915(e)(2)(B).  For the reasons stated below, the Complaint is **DISMISSED WITH LEAVE TO AMEND**.  Plaintiff is **ORDERED** to, within thirty days after the date of this Order, either: (1) file a First Amended Complaint, or (2) advise the Court that Plaintiff does not intend to file a First Amended Complaint.

///

## II. PLAINTIFF'S ALLEGATIONS AND CLAIMS

The Complaint is filed against: (1) J. Gastelo, Warden at CMC; (2) Ralph M. Diaz, Secretary of the California Department of Corrections and Rehabilitation ("CDCR"); (3) Wallace, Correctional Sergeant at CMC; (4) Amendaz, Nurse at CMC; (5) Marie Reyes, Registered Nurse ("RN") at CMC; (6) Gary Masignman, Licensed Vocational Nurse ("LVN") at CMC; (7) Steven Tanner, LVN at CMC; (8) Maria Escareal, LVN at CMC; and (9) Ronalyn Amor-Walker, RN at CMC (each a "Defendant" and collectively, "Defendants"; the Nurse, RN, and LVN Defendants collectively are referred to as the "Nurse Defendants"). (Compl. 8–9.)[1] Defendants Gastelo and Diaz are sued in their individual and official capacities. (*Id.* at 3.) The Complaint does not specify the capacities—individual and/or official—in which the other Defendants are sued. (*Id.* at 8–9.)

The Complaint and attached exhibits[2] contain the following allegations and claims. Plaintiff arrived at CMC on June 7, 2019. (*Id.* at 7.) The dining hall of CMC has a four-foot by six-foot aisle that inmates must traverse to dump their left-over food, return their food tray for washing, and exit the dining hall. (*Id.* at 9.) Plaintiff contends that the aisle is hazardous because there is always "oatmeal, cream of wheat, or some other food substance on the floor," and it is "slippery, because degreaser is never used." (*Id.*)

On June 19, 2019, Plaintiff was exiting the dining hall through the dangerous aisle and slipped on oatmeal. (*Id.* at 10.) Plaintiff's head hit the ground very hard. (*Id.*) Plaintiff experienced an immediate headache, "the likes he has never experienced in his entire life," and his whole stomach became disturbed. (*Id.*) Plaintiff's neck and back took most of the impact, and he still receives regular shots

---

[1] Citations to pages in docketed documents are to those generated by CM/ECF.

[2] Documents attached to a complaint are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

for the excruciating pain in those areas. (*Id*.) Plaintiff does not know whether he was knocked unconscious, but believes that he was. (*Id*.) In addition, Plaintiff's blood pressure was extremely high. (*Id*. at 11.)

Plaintiff alleges that Defendant Tanner, along with Gloria Mendez and Pati Medinger (who are not named Defendants), refused to administer the proper medical care to Plaintiff. (*Id*.) Rather, they listened to correctional officers and a correctional sergeant who said, "Ah he's alright. We don't have time for this . . . [W]e have other inmate's [sic] to run to the chow hall." (*Id*.) This prompted Defendant Tanner to "begin talking crazy" to Plaintiff. (*Id*.) Defendant Wallace and Nurse Defendants "talk[ed] crazy to Plaintiff, telling him he's faking and just trying to get drugs while Plaintiff lay there in plain/obvious pain." (*Id*. at 14.) Plaintiff requested to be taken to an outside hospital, but his request was denied. (*Id*. at 18.)

On June 27, 2019, while Plaintiff was on his way to breakfast between 7:30–8:30 a.m., one of Plaintiff's crutches got caught in "the hole of [a] steel plate that covered a construction hole approximately (5) wide by (9) feet long and (6) feet deep." (*Id*. at 12.) Plaintiff fell hard to the ground and injured his back and neck again. (*Id*.) Plaintiff lay on the ground in excruciating pain while at least seven officers (including Defendant Wallace) stood over Plaintiff saying "He's alright, just give him some drugs, and . . . send him back to his dorm." (*Id*.) The Nurse Defendants listened to the officers instead of sending Plaintiff to the hospital. (*Id*. at 14.)

Plaintiff filed an administrative grievance regarding the incident, and also letters and a "citizen's complaint" to Defendant Gastelo. (*Id*. at 11.)

Based on the foregoing, Plaintiff asserts four claims for violation of the Eighth Amendment. (*Id*. at 13–14.) Plaintiff also asserts "pendent state law claims," but does not name any specific state law claims. (*Id*. at 7.) Plaintiff seeks:
(1) $250,000 in damages from each Defendant; (2) $200,000 in punitive damages from Defendants Reyes, Wallace, Tanner, Amendaz, and Masigman; (3) costs and

3

reasonable attorneys' fees; and (4) such further relief as the Court deems just and proper. (*Id*. at 14–15.)

## III. STANDARD OF REVIEW

Federal courts must conduct a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity (28 U.S.C. § 1915A), or in which a plaintiff proceeds *in forma pauperis* (28 U.S.C. § Section 1915(e)(2)(B)). The court must identify cognizable claims and dismiss any complaint, or any portion thereof, that is: (1) frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

When screening a complaint to determine whether it fails to state a claim upon which relief can be granted, courts apply the Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") standard. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § Section 1915A); *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § 1915(e)(2)(B)(ii)). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

Rule 12(b)(6) is read in conjunction with Federal Rule of Civil Procedure 8(a) ("Rule 8"), "which requires not only 'fair notice of the nature of the claim, but also grounds on which the claim rests.'" *See Li v. Kerry*, 710 F.3d 995, 998 (9th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007)). In reviewing a motion to dismiss, the court will accept the plaintiff's factual allegations as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*,

851 F.3d 910, 918 (9th Cir. 2017). Although "detailed factual allegations" are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss." *Park*, 851 F.3d at 918 (alteration in original) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001)). Rather, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *implausible*." *Id.*

Where a plaintiff is *pro se*, particularly in civil rights cases, courts should construe pleadings liberally and afford the plaintiff any benefit of the doubt. *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). "[B]efore dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)). A court should grant a *pro se* plaintiff leave to amend a defective complaint "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar*, 698 F.3d at 1212 (quoting *Shucker v. Rockwood*, 846 F.2d 1202, 1203–04 (9th Cir. 1988) (per curiam)).

///

## IV. DISCUSSION

### A. The Complaint Does Not State Claims Against Defendants in Their Official Capacities.

The Complaint states that Defendants Gastelo and Diaz are sued in their individual and official capacities (Compl. 3), but does not specify the capacities in which the other Defendants are sued (*id.* at 8–9). For completeness, the Court analyzes whether the Complaint states claims against Defendants in their official capacities, and concludes that it does not.

A suit against a defendant in his or her individual capacity "seek[s] to impose personal liability upon a government official for actions he takes under color of state law . . . . Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)). The Complaint alleges that Defendant Diaz is the Secretary of the CDCR, and the other Defendants are employed at CMC, a California state prison. (Compl. 8–9.) As such, any official capacity claims against Defendants would be treated as claims against the State of California. *See Leer v. Murphy*, 844 F.2d 628, 631–32 (9th Cir. 1998) (explaining that a lawsuit against state prison officials in their official capacities was a lawsuit against the state).

California is not a "person" subject to Section 1983, and the Eleventh Amendment bars damages actions against state officials in their official capacity. *Flint v. Dennison*, 488 F.3d 816, 824–25 (9th Cir. 2007); *Nat. Res. Def. Council v. Cal. DOT*, 96 F.3d 420, 421 (9th Cir. 1996) ("State immunity extends to state agencies and to state officers, who act on behalf of the state and can therefore assert the state's sovereign immunity."). However, state officials sued in their official capacity are considered "persons" when they are sued for prospective declaratory or injunctive relief under Section 1983; the Eleventh Amendment does not bar such claims. *Flint*, 488 F.3d at 825; *Rounds v. Or. State Bd. of Higher Educ.*, 166 F.3d

1032, 1036 (9th Cir. 1999) ("*Ex Parte Young* provided a narrow exception to Eleventh Amendment immunity for certain suits seeking declaratory and injunctive relief against unconstitutional actions taken by state officers in their official capacities.") As the Complaint does not seek prospective declaratory or injunctive relief, this exception to Eleventh Amendment immunity does not apply.

In any amended complaint, Plaintiff must specify the capacity in which each Defendant is sued. If Plaintiff includes claims for damages against Defendants in their official capacities, such claims will be subject to dismissal.

### B. The Complaint Does Not State any Section 1983 Claims.

Section 1983 provides a cause of action against "every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alteration in original). The purpose of Section 1983 is "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Id*. To state a claim under Section 1983, a plaintiff must allege: (1) a right secured by the Constitution or laws of the United States was violated; and (2) the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

#### 1. The Complaint Does Not State any Individual Capacity Claims Against Defendants Gastelo and Diaz.

There can be no liability under Section 1983 unless there is an affirmative link or connection between a defendant's actions and the claimed deprivation. *See Monell*, 436 U.S. at 692. "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is

legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). The "requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Gilbrook v. City of Westminster*, 177 F.3d 839, 854 (9th Cir. 1999) (quoting *Johnson*, 588 F.3d at 743–44).

Here, the Complaint does not contain any factual allegations regarding any specific act or omission of Defendant Diaz. (*See generally* Compl.) The only specific allegation against Defendant Gastelo is that Plaintiff sent her letters and a "citizen's complaint," and she responded. (*Id.* at 11.) There are no allegations from which it reasonably could be inferred that Defendant Gastelo either directly or indirectly subjected Plaintiff to the deprivation of a constitutional right. Thus, the Complaint fails to link either Defendant Gastelo or Defendant Diaz to any alleged violations of Plaintiff's constitutional rights. *See Johnson*, 588 F.3d at 743–44.

To the extent that Plaintiff seeks to impose Section 1983 liability on Defendants Gastelo and Diaz premised on the acts of their subordinates, such claims are not cognizable. "[G]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* liability." *Iqbal*, 556 U.S. at 676. A supervisor "is only liable for his or her own misconduct, and is not "accountable for the misdeeds of [his or her] agents." *Id.* at 677. Mere knowledge of a subordinate's alleged misconduct is insufficient. *Id.*

Notwithstanding, at least in cases where the applicable standard is "deliberate indifference" (such as for Eighth Amendment claims), a plaintiff can state a claim for supervisory liability based upon the "supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *See Starr*, 652 F.3d at 1207. "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or

(2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Id.* (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). "Even if a supervisory official is not directly involved in the allegedly unconstitutional conduct, '[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'" *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (quoting *Starr*, 652 F.3d at 1208).

Here, the Complaint fails to set forth any factual allegations that Defendant Diaz had any knowledge of, or any connection with, any allegedly unconstitutional treatment that Plaintiff received at the hands of his subordinates. While the Complaint alleges that Plaintiff wrote letters and a "citizen's complaint" to Defendant Gastelo (Compl. 11), there are no allegations that would lead to the reasonable inference that Defendant Gastelo acquiesced in any unconstitutional acts or showed a reckless or callous indifference to Plaintiff's rights.

For these reasons, the Complaint does not contain sufficient allegations to state any claims against Defendants Gastelo and Diaz in their individual capacities. If Plaintiff includes individual capacity claims against Defendants Gastelo and/or Diaz in any amended complaint, he must correct these deficiencies or risk dismissal of such claims.

### 2. The Complaint Does Not State an Eighth Amendment Claim for Cruel and Unusual Punishment.

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," which prohibits cruel and unusual punishments. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). "[W]hile conditions of confinement may be, and often are, restrictive and harsh, they 'must not involve the

wanton and unnecessary infliction of pain.'" *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "In other words, they must not be devoid of legitimate penological purpose, or contrary to 'evolving standards of decency that mark the progress of a maturing society.'" *Morgan*, 465 F.3d at 1045 (citation omitted) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). "An Eighth Amendment claim that a prison official has deprived inmates of humane conditions must meet two requirements, one objective and one subjective." *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) (quoting *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1995)).

Objective Prong. First, "the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (internal quotations and citations omitted). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred. 'The more basic the need, the shorter the time it can be withheld.'" *Id.* (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)).

Here, the Complaint alleges that the aisle in the dining room of CMC is a hazard because there is always "oatmeal, cream of wheat, or some other food substance on the floor," and it is "slippery, because degreaser is never used." (Compl. 7.) However, "slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment." *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993). "Many courts have concluded that poorly maintained surfaces [and] wet floors . . . do not generally pose a substantial risk of serious harm, and are instead claims fundamentally sounding in negligence—which is insufficient to

violate the Eighth Amendment as a matter of law." *Miranda v. Madden*, No.: 3:19-cv-01605-LAB-RBM, 2019 U.S. Dist. LEXIS 192188, at *11, 2019 WL 5727444, at *5 (S.D. Cal. Nov. 4, 2019) (quotations omitted). "Courts have reached this conclusion, even where the hazard has existed, and been known to prison officials, for years and where the prisoner was required to use the dangerous location . . . ." *Pauley v. California*, No. 2:18-cv-2595 KJN P, 2018 U.S. Dist. LEXIS 193388, at *11, 2018 WL 5920780, at *4 (E.D. Cal. Nov. 13, 2018) (collecting cases).

In addition, Plaintiff alleges that he was subject to verbal abuse and ridicule. (Compl. 14.) However, verbal harassment or abuse is not protected by the Eighth Amendment. *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) ("[V]erbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.") (quoting *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)).

Subjective Prong. Second, subjectively, the prison official must act with "deliberate indifference" to an inmate's health or safety—that is, "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Here, there are no allegations in the Complaint from which it reasonably could be inferred that any Defendant acted with deliberate indifference to a sufficiently serious risk to Plaintiff's health or safety.

For these reasons, Plaintiff's Eighth Amendment claim fails. If Plaintiff files an amended complaint with an Eighth Amendment claim for cruel and unusual punishment, he must correct these deficiencies or risk dismissal of this claim.

///

///

///

### 3. The Complaint Does Not State an Eighth Amendment Claim for Deliberate Indifference to Serious Medical Needs.

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976)). "To maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle*, 429 U.S. at 104). A plaintiff must allege sufficient facts to satisfy a two-prong test: (1) an objective standard—the existence of a serious medical need; and (2) a subjective standard—deliberate indifference. *Colwell*, 763 F.3d at 1066.

Objective Prong. A "serious medical need" exists if "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Jett*, 439 F.3d at 1096 (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)). Neither result is the type of "routine discomfort [that] is 'part of the penalty that criminal offenders pay for their offenses against society.'" *McGuckin*, 974 F.2d at 1059 (alteration in original) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin*, 974 F.2d at 1059–60.

Here, the Complaint alleges that Plaintiff fell twice within an eight-day period and hit his head very hard, with his neck and back taking the brunt of the impact.

(Compl. 10, 12.) Plaintiff alleges that he had a severe headache, lost consciousness, was unable to move, and continues to suffer excruciating pain as a result of the falls. (*Id.*) "When an inmate sustains a head injury, whatever the cause, this may be the type of injury that goes beyond "[t]he routine discomfort that results from incarceration[.]" *Ross v. Wash. State Dep't of Corr.*, No. 3:16-cv-05469-RJB, 2018 U.S. Dist. LEXIS 1729, at *7–8, 2018 WL 294502, at *3 (W.D. Wash. Jan. 3, 2018) (quoting *McGuckin*, 974 F.2d at 1059). Plaintiff has alleged sufficient facts to state a serious medical need, at least in the immediate aftermath of his falls. *See Williams v. Wasco State Prison*, No. 1:14-cv-01714-MJS (PC), 2015 U.S. Dist. LEXIS 62956, at *8 (E.D. Cal. May 13, 2015) (concluding that inmate alleged serious medical need in immediate aftermath of fall where he suffered "a significant impact to his head and back, lost consciousness, urinated on himself, and initially was unable to move").

<u>Subjective Prong</u>. The subjective "deliberate indifference" prong "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096. Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." *McGuckin*, 974 F.2d at 1059. However, deliberate indifference is met only if the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 834. The defendant "must purposefully ignore or fail to respond to the plaintiff's pain or possible medical need for deliberate indifference to be established." *See McGuckin*, 974 F.2d at 1060.
///

Here, the Complaint alleges that when Plaintiff fell on June 19, 2019, Defendants refused to administer proper medical care to Plaintiff. (Compl. 11.) Defendants began "talking crazy" to Plaintiff (*id*. at 11, 14), and denied Plaintiff's request to be taken to an outside hospital (*id*. at 18). The Complaint alleges that when Plaintiff fell on June 27, 2019, at least seven officers stood over Plaintiff saying "He's alright, just give him some drugs, and . . . send him back to his dorm." (*Id*. at 12.) The Nurse Defendants listened to the officers instead of sending Plaintiff to the hospital. (*Id*. at 14.) These allegations are not sufficient to satisfy the subjective prong of "deliberate indifference."

Although Plaintiff was not sent to an outside hospital, medical records to the Complaint show that Plaintiff was examined and treated by medical staff after his June 19, 2019 and June 27, 2019 falls. (*See* Compl. 26–31.) To the extent Plaintiff is dissatisfied with the level of care he received, the proper claims should be negligence or malpractice, not Eighth Amendment deliberate indifference. "[A]n inadvertent failure to provide adequate medical care," "negligence in diagnosing or treating a medical condition," and medical malpractice do not violate the Eighth Amendment. *Estelle*, 429 U.S. at 105–06. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

To the extent that Plaintiff's Eight Amendment claim is based upon the denial of his requests to go to an outside hospital, such claim fails. "A difference of opinion between a prisoner-patient and prison medical authorities does not give rise to a § 1983 claim." *Franklin v. State of Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). Indeed, "'a difference of medical opinion' as to the need to pursue one course of treatment over another [is] insufficient, as a matter of law, to establish deliberate indifference." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (quoting *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)). Rather, "to prevail on a claim involving choices between alternative courses of treatment, a

prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Toguchi v. Chung*, 391F.3d 1051, 1058 (9th Cir. 2004) (alteration in original) (quoting *Jackson*, 90 F.3d at 332). The Complaint contains no allegations to reasonably lead to either conclusion.

For these reasons, Plaintiff's Eighth Amendment deliberate indifference claim fails. If Plaintiff files an amended complaint with an Eighth Amendment claim for deliberate indifference to serious medical needs, he must correct these deficiencies or risk dismissal of this claim.

### C. If Plaintiff Fails to Plead a Federal Claim, the Court will Decline Supplemental Jurisdiction Over Plaintiff's State Law Claims.

"[D]istrict courts may decline to exercise supplemental jurisdiction over a [state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). In deciding whether to exercise supplemental jurisdiction, a court considers "economy, convenience, fairness, and comity." *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997).

As Plaintiff has failed to plead a federal claim, the factors weigh against exercising supplemental jurisdiction over Plaintiff's state law claims (negligence and violation of California Government Code Sections 815 and 830). As to judicial economy, the Court has expended minimal effort towards this case and has not engaged in substantive analysis of Plaintiff's state law claims that would need to be duplicated in state court. The convenience factor is neutral, weighing toward neither side, as both cases would be filed within the Central District of California's geographic boundaries. So too is the fairness factor, as a state court would be as fair

as federal court.  However, comity weighs strongly in favor of declining supplemental jurisdiction, as it is "preferable as a matter of comity (respect for our sister state institutions) for state court judges to apply state law to plaintiff's state-law claims." *Millar v. Bart Dist.*, 236 F. Supp. 2d 1110, 1120 (N.D. Cal. 2002). Balancing these factors, the Court should not exercise supplemental jurisdiction over Plaintiff's state claims where Plaintiff has failed to plead a federal claim. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.") (alteration in original) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

For these reasons, if Plaintiff does not sufficiently plead a federal claim, the Court will recommend declining supplemental jurisdiction over Plaintiff's state claims.

### D. The Complaint Fails to Plead Any State Claims.

Even if the Complaint had sufficiently pled a federal claim, the Complaint fails to plead any state claims.

Before commencing a lawsuit against a California state or local public entity or its employee based on tort liability or for any claim for money or damages, the Government Claims Act requires a plaintiff to first present a written claim to the public entity. *See Gong v. City of Rosemead*, 226 Cal. App. 4th 363, 374 (2014); *see also City of Stockton v. Superior Court*, 42 Cal. 4th 730, 738 (2007).  Claims for personal injury and property damages must be presented within six months after accrual; all other claims must be presented within one year. *City of Stockton*, 42 Cal. 4th at 738.  A plaintiff cannot file a lawsuit until the written claim has been acted upon, or deemed rejected, by the board of the public entity. *State of California v.*

*Superior Court (Bodde)*, 32 Cal. 4th 1234, 1239 (2004). "[S]ubmission of a claim to a public entity pursuant to [the Government Claims Act] 'is a condition precedent to a tort action and the failure to present the claim bars the action.'" *Id.* at 1240 (quoting *Phillips v. Desert Hosp. Dist.*, 49 Cal. 3d 699, 708 (1989)); *see also Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988) (holding that plaintiff's pendent state law tort claims against both the individual and public entity defendants are barred unless he presented them in compliance with Government Claims Act before filing suit). "A cause of action that is subject to the statutory claim procedure must allege either that the plaintiff complied with the claims presentation requirement, or that a recognized exception or excuse for noncompliance exists." *Gong*, 226 Cal. App. 4th at 374; *see also Bodde*, 32 Cal. 4th at 1243 ("[A] plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement. Otherwise, his complaint is subject to a general demurrer for failure to state facts sufficient to constitute a cause of action.").

The Complaint does not allege that Plaintiff presented any potential state claims in compliance with the Government Claims Act, or that he was excused from the claim presentation requirement. Thus, the Complaint does not sufficiently plead any state law claims. If Plaintiff includes any state law claims in any amended complaint, he must state facts showing that he presented or was excused from presenting his claim in accordance with the Government Claims Act, or face dismissal of his state law claims.

### V.    CONCLUSION

For the reasons stated above, the Court **DISMISSES** the Complaint **WITH LEAVE TO AMEND**. Although highly doubtful that Plaintiff could amend the Complaint to overcome the deficiencies explained in this order, Plaintiff may have an opportunity to amend and cure the deficiencies given his *pro se* status. Plaintiff is **ORDERED** to, within thirty days after the date of this Order, either: (1) file a First

Amended Complaint ("FAC"), or (2) advise the Court that Plaintiff does not intend to file a FAC.

The FAC must cure the pleading defects discussed above and shall be complete in itself without reference to the Complaint. *See* L.R. 15-2 ("Every amended pleading filed as a matter of right or allowed by order of the Court shall be complete including exhibits. The amended pleading shall not refer to the prior, superseding pleading."). This means that Plaintiff must allege and plead any viable claims in the FAC again. Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the Complaint.

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims. Plaintiff is advised that pursuant to Rule 8, all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff strongly is encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.** In any amended complaint, Plaintiff should identify the nature of each separate legal claim and make clear what specific factual allegations support each of his separate claims. Plaintiff strongly is encouraged to keep his statements concise and to omit irrelevant details. It is not necessary for Plaintiff to cite case law, include legal argument, or attach exhibits at this stage of the litigation. Plaintiff also is advised to omit any claims for which he lacks a sufficient factual basis.

**The Court explicitly cautions Plaintiff that failure to timely file a FAC, or timely advise the Court that Plaintiff does not intend to file a FAC, will result in a recommendation that this action be dismissed for failure to prosecute and/or failure to comply with court orders pursuant to Federal Rule of Civil Procedure 41(b).**

Plaintiff is not required to file an amended complaint, especially since a complaint dismissed for failure to state a claim without leave to amend may count as

a strike under 28 U.S.C. § 1915(g).  Instead, Plaintiff may request voluntary dismissal of the action pursuant to Federal Rule of Civil Procedure 41(a) using the attached Notice of Voluntary Dismissal form.

Plaintiff is advised that this Court's determination herein that the allegations in the Complaint are insufficient to state a particular claim should not be seen as dispositive of the claim.  Accordingly, although the undersigned Magistrate Judge believes Plaintiff has failed to plead sufficient factual matter in the pleading, accepted as true, to state a claim for relief that is plausible on its face, Plaintiff is not required to omit any claim or Defendant in order to pursue this action.  However, if Plaintiff decides to pursue a claim in an amended complaint that the undersigned previously found to be insufficient, then pursuant to 28 U.S.C. § 636, the undersigned ultimately may submit to the assigned District Judge a recommendation that such claim may be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file objections.  *See* Fed. R. Civ. P. 72(b); C.D. Cal. L.R. 72-3.

**IT IS SO ORDERED.**

DATED: December 23, 2019  _____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE