1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JIMMIE CARTER,

               Plaintiff,

    v.

J. GASTELO et al.,

               Defendants.

Case No. 2:19-cv-08986-JGB (MAA)

**MEMORANDUM DECISION AND ORDER DISMISSING FOURTH AMENDED COMPLAINT WITH LEAVE TO AMEND**

I.    **INTRODUCTION**

      On October 18, 2019, Plaintiff Jimmie Carter ("Plaintiff"), a California inmate at California Men's Colony ("CMC"), proceeding *pro se*, filed a Complaint alleging violations of his civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983"). (Compl., ECF No. 1.)  On November 26, 2019, the Court granted Plaintiff's Request to Proceed *In Forma Pauperis*, as amended (ECF Nos. 2, 7).  (ECF No. 8.)

      On December 23, 2019, the Court screened and dismissed the Complaint with leave to amend ("Order Dismissing Complaint").  (Order Dismiss Compl., ECF No. 13.)  On February 27, 2020, Plaintiff filed a First Amended Complaint ("FAC," ECF No. 16), which the Court screened and dismissed with leave to amend on March 16, 2020 ("Order Dismissing FAC," ECF No. 17).  On June 16, 2020, Plaintiff filed a

Second Amended Complaint ("SAC," ECF No. 19), which the Court screened and dismissed with leave to amend on July 30, 2020 ("Order Dismissing SAC," ECF No. 22).  On August 18, 2020, Plaintiff filed a Third Amended Complaint ("TAC," ECF No. 23), which the Court screened and dismissed with leave to amend on September 3, 2020 ("Order Dismissing TAC," ECF No. 24).  In screening the Complaint, FAC, SAC, and TAC, the Court advised Plaintiff that he failed to allege any viable claims. (*See generally* Order Dismiss. Compl.; Order Dismiss. FAC; Order Dismiss. SAC; Order Dismiss. TAC.)

On September 22, 2020, Plaintiff filed a Fourth Amended Complaint ("4AC"). (4AC, ECF No. 27.)  The Court has screened the 4AC as prescribed by 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B).  For the reasons stated below, the 4AC is **DISMISSED WITH LEAVE TO AMEND**.  Plaintiff is **ORDERED** to, within thirty days after the date of this Order, either: (1) file a Fifth Amended Complaint ("5AC"); or (2) advise the Court that Plaintiff does not intend to pursue this lawsuit further and will not file a 5AC.

## II.     SUMMARY OF ALLEGATIONS AND CLAIMS[1]

### A.     Defendants

The 4AC is filed against the California Department of Corrections and Rehabilitation ("CDCR"), and the following CDCR employees who work at CMC, in their individual capacities:  (1) Josie Gastelo, Head Warden; (2) K. McQuaid, Associate Warden; (3) Captain J. Fernandez, CMC West Facility Captain; (4) Sergeant Miller, Supervisor of West Facility Chow Hall; (5) Sergeant Wallace, Facility West Medical Sergeant; (6) Steven Tanner; (7) Gary Masigman; and (8) Gloria Mendez (each a "Defendant" and collectively, "Defendants").  (4AC 3–

---

[1] The Court summarizes the allegations and claims in the 4AC.  In doing so, the Court does not opine on the veracity or merit of Plaintiff's allegations and claims, nor does the Court make any findings of fact.

4.)[2]  Defendants Gastelo, McQuaid, and Fernandez collectively are referred to as "Supervisor Defendants"; Defendants Miller and Wallace together are referred to as "Sergeant Defendants"; Defendants Tanner, Masigman, and Mendez collectively are referred to as "Nurse Defendants"; and Supervisor Defendants, Sergeant Defendants, and Nurse Defendants collectively are referred to as "Individual Defendants."

### B.    Claim 1 (All Defendants)

On June 19, 2019, Plaintiff slipped and fell on the wet floor in CMC's west facility chow hall.  (*Id.* at 5.)  The sanitation is poor in the area due to water leaks from the scullery to the walk way, and the area is always wet, littered with food and wrappers, and cluttered with trash cans.  (*Id.* at 7.)  There are no warning signs, (*id.* at 7), and there was nothing to prevent Plaintiff from slipping on the wet floor (*id.* at 10).  A new chow hall is under construction due to the poor condition of the west chow hall.  (*Id.* at 7.)

Defendant Miller initiated a Code 1.  (*Id.* at 5.)  Defendant Wallace and Nurse Defendants arrived.  (*Id.*)  Nurse Defendants examined Plaintiff and observed that he had a large knot on the back of his head and elevated blood pressure of 200/170.  (*Id.*)  Nurse Defendants told Plaintiff to get up, to which Plaintiff replied that he "could not move."  (*Id.*)  Nurse Defendants told Plaintiff that he is a "strong black man" and he should "show them how strong he is."  (*Id.* at 5–6.)  Plaintiff replied that he was in a tremendous amount of pain in his back and head, was dizzy, and could not get up.  (*Id.* at 6.)  One of the Defendants stated that Plaintiff was "bull sh—tting."  (*Id.*)  Nurse Defendants did not ask Plaintiff about any medical history or concerns, even though he is a high-risk medical inmate with a previous back operation with Dr. Tyler Campbell.  (*Id.* at 15.)  Nurse Defendants told Defendant Wallace to cancel the Code 1.  (*Id.* at 6.)  Defendant Wallace "informed" Defendant

[2] Citations to pages in docketed documents reference those generated by CM/ECF.

3

1   Miller to cancel the Code 1, and Defendant Miller—"through the advice" of
2   Defendant Wallace—cancelled the Code 1.  (*Id*.)  Defendants Wallace and Miller
3   "did not take the initiative to inform" the Nurse Defendants to treat Plaintiff
4   "because he was in need of serious medical care."  (*Id*. at 15.)  Defendant Wallace
5   and Nurse Defendants walked out of the chow hall, leaving Plaintiff on the chow
6   hall floor even though they knew he needed emergency medical care.  (*Id*. at 11.)
7   Nurse Defendants walked out on Plaintiff and discriminated against him when they
8   told him to stand up because he is a "strong black man."  (*Id*. at 15.)

9       Defendant Miller ordered two inmates—one of whom was an ADA[3] worker
10  named Gilbert Hernandez—to carry Plaintiff outside the chow hall so chow could
11  continue.  (*Id*. at 6.)  The two inmates carried Plaintiff outside the chow hall and
12  placed him on the ground, where he remained for an hour.  (*Id*.)  The two inmates
13  realized that Plaintiff could not move and carried him to his dorm #9.  (*Id*.)  Plaintiff
14  fell unconscious, and another Code 1 was initiated.  (*Id*.)  Defendant Mendez took
15  Plaintiff's blood pressure and discovered that it was still 200/170.  (*Id*.)

16      At that time, Plaintiff was transported by ambulance to CMC-East Hospital.
17  (*Id*.)  Dr. Donan Bulosan evaluated Plaintiff and discovered that Plaintiff had a large
18  knot in the back of his head and had suffered a concussion.  (*Id*.)  Dr. Donan
19  Bulosan gave Plaintiff an injection in his back for the pain, administered an EKG,
20  and issued crutches to Plaintiff to assist with his mobility.  (*Id*.)

21      Defendant Gastelo is the warden at CMC, whose duty while acting under
22  color of state law is to provide Plaintiff with adequate shelter, food, clothing,
23  sanitation, personal safety, and medical care.  (*Id*. at 5.)  Defendant Gastelo is
24  responsible for training the staff according to policy and regulations.  (*Id*.)
25  Defendant Gastelo is aware of the on-going poor condition of the west chow hall
26  ///

27
28  _____
    [3] Presumably, this refers to the Americans with Disabilities Act.

and "poor medical treatment or no treatment at all due mostly to race discrimination." (*Id*. at 6–7.)  The staff at CMC is 90% white. (*Id*. at 7.)

Defendant McQuaid is the associate warden at CMC. (*Id*.)  Her office is next to the chow hall and she is aware of the chow hall's poor conditions. (*Id*.)  Defendant McQuaid reports to Defendant Gastelo, and acts as an agent to facilitate Defendant Gastelo's responsibilities. (*Id*.)  Defendant McQuaid's office is also next to "west medical," and she has the duty to ensure that Plaintiff is provided with adequate medical care through the performance of her medical staff. (*Id*.)

Defendant Fernandez is the supervisor of Sergeant Defendants, and is responsible for the safety and security at the west facility and to ensure that her subordinates are properly trained for medical emergencies. (*Id*. at 9.)

Defendant CDCR is operated on the power of state statutes and has the power and authority to make rules regarding the standard of medical care. (*Id*. at 16.)  Defendant CDCR employed the Individual Defendants who are its agents to ensure that its rules, policies, and regulations are enforced and followed. (*Id*.)  Defendant CDCR is responsible for the actions of its employees. (*Id*.)

Claim 1 asserts a violation of the Eighth Amendment due to the deprivation of medical care from Plaintiff after his fall. (*Id*. at 5.)  For Claim 1, Plaintiff seeks declaratory and injunctive relief; compensatory, punitive, and treble damages; and court costs and filing fees. (*Id*. at 18.)

### C.    Claim 2 (Supervisor Defendants)

On June 27, 2019, Plaintiff was walking on crutches that were provided to him after he slipped and fell in the chow hall on June 19, 2019. (*Id*. at 19.)  Plaintiff's crutches fell through the hole and broke in half on the iron plate on the E-yard west facility. (*Id*.)  The hole was there for the installation of pipes for the construction of the new chow hall, which was being built by inmate day labor. (*Id*.)
///

1  Plaintiff fell head-first, hit his chin, had the wind knocked out of him, and urinated

2  on himself.  (*Id*. at 19–20.)

3        Correctional Officer E. Guapel witnessed the incident and sounded the alarm

4  for a Code 1.  (*Id*. at 19.)  An ambulance arrived, and medical staff examined

5  Plaintiff and placed a cervical collar on his neck due to the severe pain.  (*Id*.)

6  Plaintiff was almost run over by "union worker Tony" while he was driving by.  (*Id*.

7  at 20.)  The ambulance transported Plaintiff to CMC East Hospital, where Plaintiff

8  was seen by Dr. Bulosan.  (*Id*.)  Plaintiff was unable to sit up due to the severe pain

9  in his back (coccyx area) and neck, so remained on the gurney.  (*Id*.)  Plaintiff could

10 not move or use his prescribed crutches.  (*Id*.)

11       Supervisor Defendants are responsible for the proper training of staff at CMC,

12 to ensure the safety and security of CMC, and to provide Plaintiff with proper

13 shelter, food, clothing, sanitation, medical care, and personal safety.  (*Id*. at 19.)

14 Plaintiff's injuries were foreseeable by Supervisor Defendants, who accompanied

15 each other daily overseeing the construction site.  (*Id*.)  Supervisor Defendants had

16 knowledge that the walkway was not properly secured and could cause injury, but

17 failed to provide the protection that could prevent injury.  (*Id*. at 20.)  On some

18 occasions correctional officers would tell the inmates to "watch where you are

19 walking or watch your step."  (*Id*.)  CMC-West has high-medical-risk inmates that

20 are mobility-impaired or with hearing disabilities.  (*Id*.)  There were no sign, cones,

21 or staff to assist Plaintiff on the day of the fall.  (*Id*.)  Plaintiff wrote to Defendants

22 Gastelo and McQuaid and informed them the walkway "is still a safety hazard."

23 (*Id*.)

24       Claim 2 asserts a violation of the Eighth Amendment's prohibition against

25 cruel and unusual punishment.  (*Id*. at 19.)  For Claim 2, Plaintiff seeks declaratory

26 and injunctive relief; compensatory and punitive damages; and court costs and filing

27 fees.  (*Id*. at 21.)

28 ///

### III.   LEGAL STANDARD

Federal courts must conduct a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity (28 U.S.C. § 1915A), or in which a plaintiff proceeds *in forma pauperis* (28 U.S.C. § Section 1915(e)(2)(B)).  The court must identify cognizable claims and dismiss any complaint, or any portion thereof, that is:  (1) frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

When screening a complaint to determine whether it fails to state a claim upon which relief can be granted, courts apply the Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") standard.  *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § Section 1915A); *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § 1915(e)(2)(B)(ii)).  To survive a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* Although "detailed factual allegations" are not required, "an unadorned, the-defendant-unlawfully-harmed-me accusation"; "labels and conclusions"; "naked assertion[s] devoid of further factual enhancement"; and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to defeat a motion to dismiss.  *Id.* (quotations omitted).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Hartmann v. Cal.* ///

7

*Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

In reviewing a Rule 12(b)(6) motion to dismiss, courts will accept factual allegations as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). Moreover, where a plaintiff is appearing *pro se*, particularly in civil rights cases, courts construe pleadings liberally and afford the plaintiff any benefit of the doubt. *Wilhelm*, 680 F.3d at 1121. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). However, the liberal pleading standard "applies only to a plaintiff's factual allegations." *Neitzke v. Williams,* 490 U.S. 319, 330 n.9 (1989), *superseded by statute on other grounds*, 28 U.S.C. § 1915. Courts will not "accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.,* 349 F.3d 1191, 1200 (9th Cir. 2003). In giving liberal interpretations to complaints, courts "may not supply essential elements of the claim that were not initially pled." *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (quoting *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)).

## IV.   DISCUSSION

### A.   Section 1983

Section 1983 provides a cause of action against "every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alteration in original) (quoting 42 U.S.C. § 1983). The purpose of Section 1983 is "to deter state actors from using the badge of their authority to deprive individuals of their

1   federally guaranteed rights and to provide relief to victims if such deterrence fails."

2   *Id*.  To state a claim under Section 1983, a plaintiff must allege:  (1) a right secured

3   by the Constitution or laws of the United States was violated; and (2) the alleged

4   violation was committed by a person acting under color of state law.  *West v. Atkins*,

5   487 U.S. 42, 48 (1988).

6       Here, Claim 1 asserts a violation of the Eighth Amendment against all

7   Defendants due to the medical care—or lack thereof—that Plaintiff received after his

8   first fall.  (4AC 5.)  Claim 2 asserts a violation of the Eighth Amendment's

9   prohibition against cruel and unusual punishment.  (*Id*. at 19.)  Mindful of the liberal

10  pleading standards afforded *pro se* civil rights plaintiffs, the Court also examines

11  Plaintiff's new allegations of racial discrimination (*see id*. at 6–7, 15) in light of the

12  Fourteenth Amendment guarantee to equal protection.  *See Fontana v. Haskin*, 262

13  F.3d 871, 877 (9th Cir. 2001) ("Specific legal theories need not be pleaded so long

14  as sufficient factual averments show that the claimant may be entitled to some

15  relief."); *Ellis v. Brady*, Case No. 16cv1419 WQH (NLS), 2017 U.S. Dist. LEXIS

16  203458, at *15–16 (S.D. Cal. Dec. 8, 2017) (concluding that court could address

17  plaintiff's claim asserted under the wrong constitutional amendment, as "it is the

18  factual allegations, not the legal labels attached, which determine the issue").

19

20      **B.    Defendant CDCR**

21      The 4AC once again attempts to sue Defendant CDCR.  (4AC 4.)  As the

22  Court previously explained, "[i]n the absence of a waiver by the state or a valid

23  congressional override, 'under the eleventh amendment, agencies of the state are

24  immune from private damage actions or suits for injunctive relief brought in federal

25  court.'"  *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999) (quoting

26  *Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1989)).  The Eleventh

27  Amendment bar "applies whether the relief sought is legal or equitable in nature."

28  *Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1053 (9th Cir. 1991).

Thus, Plaintiff's claims against Defendant CDCR are not cognizable.  The Court previously advised Plaintiff that Defendant CDCR was not a proper Defendant.  (*See* Order Dismiss. TAC 10–11.)

For these reasons, Plaintiff's claims against Defendant CDCR are not cognizable.  If Plaintiff includes Defendant CDCR in any amended complaint, it will be subject to dismissal.

## C.  Eighth Amendment Deliberate Indifference to Serious Medical Needs

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983."  *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976)).  "To maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle*, 429 U.S. at 104).  A plaintiff must allege sufficient facts to satisfy a two-prong test:  (1) an objective standard—the existence of a serious medical need; and (2) a subjective standard—deliberate indifference.  *See id*.

### 1.  Objective Prong

A "serious medical need" exists if "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  *Id.* (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).  Neither result is the type of "routine discomfort [that] is 'part of the penalty that criminal offenders pay for their offenses against society.'" *McGuckin*, 974 F.2d at 1059 (alteration in original) (quoting *Hudson v. McMillian*,

503 U.S. 1, 9 (1992)).  "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment."  *Id.* at 1059–60.

Here, the 4AC alleges that Plaintiff fell on June 19, 2019, suffered a minor concussion, and was unable to walk.  (4AC 5.)  "When an inmate sustains a head injury, whatever the cause, this may be the type of injury that goes beyond "[t]he routine discomfort that results from incarceration[.]"  *Ross v. Wash. State Dep't of Corr.*, No. 3:16-cv-05469-RJB, 2018 U.S. Dist. LEXIS 1729, at *7–8 (W.D. Wash. Jan. 3, 2018) (quoting *McGuckin*, 974 F.2d at 1059).  Plaintiff has alleged sufficient facts to state a serious medical need, at least in the immediate aftermath of his fall.  *See, e.g., Williams v. Wasco State Prison*, No. 1:14-cv-01714-MJS (PC), 2015 U.S. Dist. LEXIS 62956, at *8 (E.D. Cal. May 13, 2015) (concluding that inmate alleged serious medical need in immediate aftermath of fall where he suffered "a significant impact to his head and back, lost consciousness, urinated on himself, and initially was unable to move").

## 2.   Subjective Prong

The subjective "deliberate indifference" prong "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."  *Jett*, 439 F.3d at 1096.  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care."  *McGuckin*, 974 F.2d at 1059.  However, deliberate indifference is met only if the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he

1   must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  The

2   defendant "must purposefully ignore or fail to respond to the plaintiff's pain or

3   possible medical need for deliberate indifference to be established."  *See McGuckin*,

4   974 F.2d at 1060.

5

6                                a.      *Nurse Defendants and Sergeant Defendants*

7          Here, the 4AC alleges that when Plaintiff fell on June 19, 2019, he was denied

8   proper medical care by the Nurse Defendants and Sergeant Defendants.

9   Specifically, Plaintiff alleges that after he fell, Defendant Mill initiated a Code 1, to

10  which Defendants Wallace and Nurse Defendants responded.  (4AC 5.)  Nurse

11  Defendants examined Plaintiff, and observed that Plaintiff had a large knot on the

12  back of his head and elevated blood pressure of 200/170.  (*Id*.)  Nurse Defendants

13  told Plaintiff to get up, to which Plaintiff replied that he "could not move."  (*Id*.)

14  Nurse Defendants told Plaintiff that he is a "strong black man" and he should "show

15  them how strong he is."  (*Id*. at 5–6.)  Plaintiff replied that he was in a tremendous

16  amount of pain in his back and head, was dizzy, and could not get up.  (*Id*. at 6.)

17  One of the Defendants stated that Plaintiff was "bull sh—tting."  (*Id*.)  Nurse

18  Defendants did not ask Plaintiff about any medical history or concerns, even though

19  he is a high-risk medical inmate with a previous back operation with Dr. Tyler

20  Campbell.  (*Id*. at 15.)  Nurse Defendants told Defendant Wallace to cancel the Code

21  1.  (*Id*. at 6.)  Defendant Wallace "informed" Defendant Miller to cancel the Code 1,

22  and Defendant Miller—"through the advice" of Defendant Wallace—cancelled the

23  Code 1.  (*Id*.)  Defendants Wallace and Miller "did not take the initiative to inform"

24  the Nurse Defendants to treat Plaintiff "because he was in need of serious medical

25  care."  (*Id*. at 15.)  Defendant Wallace and Nurse Defendants walked out of the chow

26  hall, leaving Plaintiff on the chow hall floor even though they knew he needed

27  emergency medical care.  (*Id*. at 11.)  Defendant Miller ordered two inmates to carry

28  Plaintiff outside the chow hall so chow could continue.  (*Id*. at 6.)  The two inmates

carried Plaintiff outside the chow hall and placed him on the ground, where he remained for an hour.  (*Id*.)  The two inmates realized that Plaintiff could not move and carried him to his dorm #9.  (*Id*.)  Plaintiff fell unconscious, and another Code 1 was initiated.  (*Id*.)  Defendant Mendez took Plaintiff's blood pressure and discovered that it was still 200/170.  (*Id*.)  At that time, Plaintiff was transported by ambulance to CMC-East Hospital, where he was treated by Dr. Bulosan.  (*Id*.)

The 4AC does not contain sufficient allegations to satisfy the subjective prong of "deliberate indifference" with respect to Nurse Defendants and Sergeant Defendants.  The 4AC alleges that Nurse Defendants examined Plaintiff after he fell and determined that he did not require any additional medical treatment.  (4AC 5–6.)  "A medical decision not to order [a form of treatment] . . . does not represent cruel and unusual punishment."  *Estelle*, 429 U.S. at 107–08.

To the extent Plaintiff is dissatisfied with the level of care he received, the proper claims should be negligence or malpractice, not Eighth Amendment deliberate indifference.  "[A]n inadvertent failure to provide adequate medical care," "negligence in diagnosing or treating a medical condition," and medical malpractice do not violate the Eighth Amendment.  *Id.* at 105–06.  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

To the extent that Plaintiff's Eighth Amendment claim is based on his disagreement with the care he received and/or his disagreement with the cancellation of the first Code 1, such claim fails.  "A difference of opinion between a prisoner-patient and prison medical authorities does not give rise to a § 1983 claim." *Franklin v. State of Oregon*, *State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).  Indeed, "'a difference of medical opinion' as to the need to pursue one course of treatment over another [is] insufficient, as a matter of law, to establish deliberate indifference." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (quoting *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)).  Rather, "to prevail on a claim involving choices

13

between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (alteration in original) (quoting *Jackson*, 90 F.3d at 332). The 4AC contains no allegations to reasonably lead to either conclusion.

For these reasons, Plaintiff's Eighth Amendment deliberate indifference claims against Nurse Defendants and Sergeant Defendants fail. The Court previously explained the deficiencies of these claims in four separate orders. (*See* Order Dismiss. Compl. 12–15; Order Dismiss. FAC 13–16; Order Dismiss. SAC 12–14; Order Dismiss. TAC 16–19.) If Plaintiff files an amended complaint with Eighth Amendment deliberate indifference claims against Nurse Defendants and Sergeant Defendants, he must correct these deficiencies or risk dismissal of such claims.

                              b.    *Supervisor Defendants*

"[G]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* liability." *Iqbal*, 556 U.S. at 676. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr*, 652 F.3d at 1207 (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). "The requisite causal connection can be established . . . by setting in motion a series of acts by others, . . . or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause

others to inflict a constitutional injury," *Id.* at 1207–08 (alteration in original) (quotation marks and citation omitted).  "Even if a supervisory official is not directly involved in the allegedly unconstitutional conduct, '[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'"  *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (alteration in original) (quoting *Starr*, 652 F.3d at 1208).  'Therefore, the claim that a supervisory official knew of unconstitutional conditions and 'culpable actions of his subordinates' but failed to act amounts to 'acquiescence in the unconstitutional conduct of his subordinates' and is 'sufficient to state a claim of supervisory liability.'"  *Id.* (quoting *Starr*, 652 F.3d at 1208).

Here, the 4AC does not contain any factual allegations regarding any specific act or omission of the Supervisor Defendants in connection with the purported denial of medical treatment to Plaintiff on June 19, 2019.  (*See generally* 4AC.)  Thus, the 4AC fails to link any of the Supervisor Defendants to the purported deliberate indifference to Plaintiff's serious medical needs.  In addition, the 4AC does not include any factual allegations that the Supervisor Defendants had any knowledge of any constitutional deprivations by their subordinates and acquiesced in them.  *See Keates*, 883 F.3d at 1243.  Rather, the 4AC contains only conclusory, speculative allegations that the Supervisor Defendants were aware of the condition of the CMC west chow hall and the poor medical care at CMC, and are responsible for the safety and security of CMC, preventing injuries to inmates, and supervising and training staff.  (4AC 5–9.)  These conclusory allegations are "unadorned," "naked assertions" and "labels and conclusions" that lack any specific factual allegations, and are not sufficient to state any cognizable claims against the Supervisor Defendants.  *See Iqbal*, 556 U.S. at 678; *see Keates*, 883 F.3d at 1243 (affirming dismissal of supervisory liability claim based on conclusory and speculative allegations); *see also*

15

1   *Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 926–27 (9th Cir. 2013)

2   (concluding that "conclusory allegations" that a supervisory defendant "directed"

3   other defendants, without factual assertions to support the allegation, were

4   insufficient to defeat a motion to dismiss).

5          For these reasons, Plaintiff's Eighth Amendment deliberate indifference

6   claims against the Supervisor Defendants fail.  The Court previously explained the

7   deficiencies of these claims in four separate orders.  (*See* Order Dismiss. Compl. 7–

8   9; Order Dismiss. FAC 8–11; Order Dismiss. SAC 14–16; Order Dismiss. TAC 19–

9   21.)  If Plaintiff files an amended complaint with Eighth Amendment deliberate

10  indifference claims against the Supervisor Defendants in their individual capacities,

11  he must correct these deficiencies or risk dismissal of such claims.

12

13          **D.      Eighth Amendment Condition of Confinement**

14          "[T]he treatment a prisoner receives in prison and the conditions under which

15  he is confined are subject to scrutiny under the Eighth Amendment," which prohibits

16  cruel and unusual punishments.  *Farmer*, 511 U.S. at 832 (quoting *Helling v.*

17  *McKinney*, 509 U.S. 25, 31 (1993)).  "[W]hile conditions of confinement may be,

18  and often are, restrictive and harsh, they 'must not involve the wanton and

19  unnecessary infliction of pain.'"  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th

20  Cir. 2006) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  "In other

21  words, they must not be devoid of legitimate penological purpose, or contrary to

22  'evolving standards of decency that mark the progress of a maturing society.'"  *Id.*

23  (citation omitted) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).  "An Eighth

24  Amendment claim that a prison official has deprived inmates of humane conditions

25  must meet two requirements, one objective and one subjective."  *Lopez v. Smith*, 203

26  F.3d 1122, 1132 (9th Cir. 2000) (quoting *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th

27  Cir. 1995)).

28  ///

1              1.    <u>Objective Prong</u>

2          "[T]he deprivation alleged must be, objectively, sufficiently serious; a prison

3    official's act or omission must result in the denial of the minimal civilized measure

4    of life's necessities."  *Farmer*, 511 U.S. at 834 (internal quotations and citations

5    omitted).  "Prison officials have a duty to ensure that prisoners are provided

6    adequate shelter, food, clothing, sanitation, medical care, and personal safety."

7    *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).  "The circumstances, nature,

8    and duration of a deprivation of these necessities must be considered in determining

9    whether a constitutional violation has occurred. 'The more basic the need, the

10   shorter the time it can be withheld.'"  *Id.* (quoting *Hoptowit v. Ray*, 682 F.2d 1237,

11   1246 (9th Cir. 1982)).

12         Here, the 4AC asserts two incidents in which Plaintiff's Eighth Amendment

13   rights against cruel and unusual punishments potentially were violated, although the

14   4AC only asserts such a claim for the second incident.  <u>First</u>, on June 19, 2019,

15   Plaintiff slipped and fell on the wet floor in CMC's West Facility chow hall.  (4AC

16   5.)  The 4AC alleges that the sanitation is poor in the area due to water leaks from

17   the scullery to the walk way; the area is always wet, littered with food and wrappers,

18   and cluttered with trash cans; and there are no warning signs and nothing to prevent

19   Plaintiff from slipping on the wet floor.  (*Id.* at 7, 10.)  The 4AC also alleges that

20   Plaintiff is a high-risk medical inmate with a previous back operation with Dr.

21   Campbell.  (*Id.* at 15.)  <u>Second</u>, the 4AC alleges that eight days later on June 27,

22   2019, Plaintiff was walking on crutches on the E-yard west facility when he fell

23   through a hole on an iron plate head first.  (*Id.* at 19.)  The hole was there for the

24   installation of pipes for the construction of the new chow hall, which was being built

25   by inmate day labor.  (*Id.*)  The 4AC states that Plaintiff fell head-first, hit his chin,

26   had the wind knocked out of him, and urinated on himself.  (*Id.* at 19–20.)

27         The Ninth Circuit has held that "even if the floors . . . are slippery and

28   [inmates] might fall . . ., 'slippery prison floors . . . do not state even an arguable

17

1   claim for cruel and unusual punishment.'" *LeMaire v. Maass*, 12 F.3d 1444, 1457

2   (9th Cir. 1993) (quoting *Jackson v. Arizona*, 885 F.2d 639, 641 (9th Cir. 1989)).

3   "Many courts have concluded that poorly maintained surfaces [and] wet floors . . .

4   do not generally pose a substantial risk of serious harm, and are instead claims

5   fundamentally sounding in negligence—which is insufficient to violate the Eighth

6   Amendment as a matter of law." *Miranda v. Madden*, No.: 3:19-cv-01605-LAB-

7   RBM, 2019 U.S. Dist. LEXIS 192188, at *11 (S.D. Cal. Nov. 4, 2019) (quotations

8   omitted).  "Courts have reached this conclusion, even where the hazard has existed,

9   and been known to prison officials, for years and where the prisoner was required to

10   use the dangerous location . . . ." *Pauley v. California*, No. 2:18-cv-2595 KJN P,

11   2018 U.S. Dist. LEXIS 193388, at *11 (E.D. Cal. Nov. 13, 2018) (collecting cases).

12        However, "[s]lippery floors without protective measures could create a

13   sufficient danger to warrant relief" where the plaintiff has a known exacerbating

14   condition.  *Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998) (reversing grant of

15   summary judgment on an Eighth Amendment claim for prison officials' failure to

16   provide an accessible shower to inmate who used crutches when they knew the

17   inmate had fallen and injured himself several times); *accord Sharrott v. Halawa*

18   *Prison ADA Compl. Team*, No. 18-00486 JMS-RT, 2019 U.S. Dist. LEXIS 6624, at

19   *9 (D. Haw. Jan. 14, 2019) ("To state a colorable constitutional violation, slippery

20   floors normally must be alleged in conjunction with some other exacerbating

21   condition."); *Brown v. Flores*, No. 18-CV-01578 LHK (PR), 2018 U.S. Dist. LEXIS

22   229920, at *7 (N.D. Cal. Oct. 3, 2018) ("In order to state a cognizable claim for

23   relief, there must be a confluence of exacerbating conditions such that the flooded

24   cell posed a serious, unavoidable threat to plaintiff's safety and defendants knew of

25   this substantial risk.").  Thus, "awareness of a prisoner's disability or proclivity

26   toward falling may turn a slippery prison floor into a potential constitutional claim,

27   depending on the level of danger and awareness." *Jones v. Meddly*, No. 1:17-cv-

28   00109-SAB (PC), 2019 U.S. Dist. LEXIS 122784, at *19 (E.D. Cal. July 23, 2019).

With respect to Plaintiff's fall in the chow hall on June 19, 2019, the 4AC does not allege that Plaintiff had any known exacerbating conditions such that the condition of the floor would violate the Eighth Amendment.  (*See generally* 4AC.) The 4AC alleges that Plaintiff was a high-risk medical patient who had a previous back operation with Dr. Campbell.  (*Id*. at 15.)  However, there are no allegations from which it reasonably could be inferred that an operation at an unspecified time in the past presented an exacerbating condition such that Plaintiff was disabled or prone to falling, and that any Supervisor Defendant was aware of such condition.  In the absence of a known, exacerbating condition, the 4AC does not state a claim for cruel and unusual punishment for the slippery floor in the chow hall.  *See LeMaire*, 12 F.3d at 1457.

With respect to Plaintiff's subsequent fall at the construction site on June 27, 2019, the 4AC alleges an exacerbating condition:  Plaintiff had fallen eight days previously and was walking with the assistance of crutches.  (4AC 19.)  Nonetheless, this claim fails because there are no allegations that the Supervisor Defendants were aware that Plaintiff had fallen, that he was walking with crutches, and/or that he would be walking through the construction site.  (*See generally id*.)  The 4AC's conclusory allegation that Plaintiff's injuries were "foreseeable" by Supervisor Defendants (*id*. at 19) is not sufficient.  *See Iqbal*, 556 U.S. at 678 (rejecting "threadbare recitals of a cause of action's elements, supported by mere conclusory statements").  Without such allegations, the 4AC does not state an Eighth Amendment claim for the conditions surrounding Plaintiff's June 27, 2019 fall.  *See Slocum v. Fowler*, No. 2:16-cv-02169-JAD-CWH, 2018 U.S. Dist. LEXIS 159298, at *7 (D. Nev. Sept. 18, 2018) (holding that plaintiff did not allege an Eighth Amendment violation for a slippery floor where there were no allegations that defendants had prior knowledge of a physical limitation of plaintiff).

///

///

2.      Subjective Prong

Subjectively, the prison official must act with "deliberate indifference" to an inmate's health or safety—that is, "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Here, the 4AC asserts that Supervisor Defendants were responsible for the conditions surrounding Plaintiff's two falls. However, there are no allegations in the 4AC from which it reasonably could be inferred that any Supervisor Defendant acted with deliberate indifference. Indeed, there are only conclusory, speculative allegations that the Supervisor Defendants were aware of the purported risks, which are insufficient to state a claim for deliberate indifference. *See, e.g., Graves v. Cal. Dep't of Corr. & Rehab.*, No. EDCV 17-1086 JGB (SPx), 2019 U.S. Dist. LEXIS 229086, at *19 (C.D. Cal. Nov. 14, 2019) (holding that conclusory assertions unsupported by further factual allegations are not sufficient to infer actual knowledge and indifference); *Marks v. Doe*, No. C09-5489 RJB/KLS, 2010 U.S. Dist. LEXIS 24209, at *13 (W.D. Wash. Feb. 23, 2010) (holding that conclusory allegations without specific facts regarding defendants' knowledge was insufficient to plead deliberate indifference). Specifically with respect to the second fall, the 4AC alleges that there were no signs, cones or staff to assist Plaintiff on the day of the fall, and that Plaintiff wrote to Defendants Gastelo and McQuaid to inform them that the walkway "is still a safety hazard." (4AC 20.) However, this allegation suggests that Plaintiff wrote to Defendants Gastelo and McQuaid *after* Plaintiff's fall, which cannot support the inference that such Defendants were aware of the risk before Plaintiff's fall and disregarded it. *See Farmer*, 511 U.S. at 837.

For these reasons, Plaintiff's Eighth Amendment cruel and unusual punishments claims fail. The Court previously explained the deficiencies of these

claims in four separate orders.  (*See* Order Dismiss. Compl. 9–11; Order Dismiss. FAC 11–13; Order Dismiss. SAC 17–21; Order Dismiss. TAC 21–25.)  If Plaintiff files an amended complaint with an Eighth Amendment claim for cruel and unusual punishments, he must correct these deficiencies or risk dismissal of such claims.

### E.    Fourteenth Amendment Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment provides that '[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws.'"  *Angelotti Chiropractic v. Baker*, 791 F.3d 1075, 1085 (9th Cir. 2015) (alteration in original) (quoting U.S. Const. amend. XIV, § 1).  "The Equal Protection Clause requires the State to treat all similarly situated people equally."  *Hartmann*, 707 F.3d at 1123.  "The Equal Protection Clause does not forbid classifications.  It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."  *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).  A plaintiff can state an equal protection claim:  (1) by alleging "facts plausibly showing that 'the defendants acted with an intent or purpose to discriminate against [them] based upon membership in a protected class,'"  *Hartmann*, 707 F.3d at 1123 (alteration in original) (quoting *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005)); or (2) as a "class of one" by alleging that plaintiff has "been intentionally treated differently from others similarly situated and that there is no rational basis for the treatment,"  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, the 4AC alleges that Defendants discriminated against Plaintiff and denied him medical care due to his race.  (4AC 6–7, 15.)  In support of this claim, the 4AC states that Nurse Defendants told Plaintiff to show them that he was a "strong black man" by standing up, and that 90% of CMC staff is white.  (*Id*.)  Race is a suspect distinction for equal protection purposes.  *See New Orleans v. Dukes*, 427 U.S. 297, 303 (1976).  However, the 4AC does not include any allegations from

21

which it could be inferred that any Defendant acted with an intent or purpose to discriminate against Plaintiff *because of* his race. *See Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) ("Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status.") (quoting *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994)). The conclusory allegations that Defendants discriminated against Plaintiff because of his race is insufficient to support a Section 1983 claim. *See Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (holding insufficient to support a § 1983 claim bare allegations of discrimination against African-Americans "unsupported by any facts as to how race entered into any decisions"). Finally, the 4AC does not allege any facts to support the conclusion that any Defendant intentionally treated Plaintiff differently from others similarly situated without any rational basis for the treatment. *See Village of Willowbrook*, 528 U.S. at 564.

For these reasons, Plaintiff's Fourteenth Amendment equal protection claim fails. If Plaintiff files an amended complaint with a Fourteenth Amendment equal protection claim, he must correct these deficiencies or risk dismissal of this claim.

## V.    CONCLUSION

For the reasons stated above, the Court **DISMISSES** the 4AC **WITH LEAVE TO AMEND**. Plaintiff may have another opportunity to amend and cure the deficiencies given his *pro se* status. Plaintiff is **ORDERED** to, within thirty days after the date of this Order, either: (1) file a 5AC, or (2) advise the Court that Plaintiff does not intend to pursue this lawsuit further and will not file a 5AC.

The 5AC must cure the pleading defects discussed above and shall be complete in itself without reference to the 4AC. *See* L.R. 15-2 ("Every amended pleading filed as a matter of right or allowed by order of the Court shall be complete including exhibits. The amended pleading shall not refer to the prior, superseding pleading."). This means that Plaintiff must allege and plead any viable claims in the

5AC again.  **Plaintiff shall not include new Defendants, new allegations, or new claims that are not reasonably related to the claims asserted in the 4AC.**

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims.  Plaintiff is advised that pursuant to Rule 8, all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief."  **Plaintiff strongly is encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.**  In any amended complaint, Plaintiff should identify the nature of each separate legal claim and make clear what specific factual allegations support each of his separate claims.  Plaintiff strongly is encouraged to keep his statements concise and to omit irrelevant details.  **Plaintiff should include an allegation only once, and should not repeat the same allegation multiple times. Specifically, Plaintiff should NOT repeat the same allegations multiple times for each Defendant.**  It is not necessary for Plaintiff to cite case law, include legal argument, or attach exhibits at this stage of the litigation.  Plaintiff also is advised to omit any claims for which he lacks a sufficient factual basis.

**The Court explicitly cautions Plaintiff that failure to timely file a 5AC, or timely advise the Court that Plaintiff does not intend to file a 5AC, will result in a recommendation that this action be dismissed for failure to prosecute and/or failure to comply with court orders pursuant to Federal Rule of Civil Procedure 41(b).**

Plaintiff is not required to file an amended complaint, especially since a complaint dismissed for failure to state a claim without leave to amend may count as a strike under 28 U.S.C. § 1915(g).  Instead, Plaintiff may request voluntary dismissal of the action pursuant to Federal Rule of Civil Procedure 41(a).  A Notice of Dismissal form is attached for Plaintiff's convenience.

Plaintiff is advised that this Court's determination herein that the allegations in the 4AC are insufficient to state a particular claim should not be seen as

dispositive of the claim.  Accordingly, although the undersigned Magistrate Judge believes Plaintiff has failed to plead sufficient factual matter in the pleading, accepted as true, to state a claim for relief that is plausible on its face, Plaintiff is not required to omit any claim or Defendant in order to pursue this action.  However, if Plaintiff decides to pursue a claim in an amended complaint that the undersigned previously found to be insufficient, then pursuant to 28 U.S.C. § 636, the undersigned ultimately may submit to the assigned District Judge a recommendation that such claim may be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file objections.  *See* Fed. R. Civ. P. 72(b); C.D. Cal. L.R. 72-3.

IT IS SO ORDERED.

DATED: October 26, 2020

MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE

Attachments

Form Civil Rights Complaint (CV-66)

Form Notice of Dismissal